UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SIM SPENCER,

        Plaintiff,

Case No. 1:19-cv-201

Hon. Robert J. Jonker

v.

JOSEPH GASPER,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by plaintiff William Sim Spencer ("Spencer") pursuant to 42 U.S.C. § 1983. On October 23, 2001, Spencer pled guilty to eight counts of second-degree criminal sexual conduct (CSC II). *See* Plea Trans. (Oct. 23, 2001) (ECF No. 1-14). These convictions required him to register as a sex offender under Michigan's Sex Offenders Registration Act, M.C.L. § 28.721 *et seq*. ("SORA"). Compl. (ECF No. 1, PageID.4-5); *see People v. Spencer*, Nos. 343367 & 343468 (Mich. App. Jan. 22, 2019) (ECF No. 1-2, PageID.17). The present lawsuit seeks declaratory and injunctive relief against Col. Joseph Gasper in his official capacity as Director of the Michigan State Police ("MSP"). This is Spencer's second lawsuit filed in this Court challenging the constitutionality and application SORA. His first lawsuit remains pending. *See William Sim Spencer v. Bill Schuette, et al.*, 1:18-cv-229 (W.D. Mich.) ("*Spencer v. Schuette*").[1] This matter is now before the Court on defendant Gasper's motion to dismiss (ECF No. 22). The motion is unopposed.

---

[1] The Court notes that in *Spencer v. Schuette*, Spencer is suing former Michigan Attorney General Schuette, former MSP Director Etue, special prosecutor Cooney, MSP Trooper Smith, and Benzie County Prosecutor Swanson. Most of these government actors are referenced in Spencer's present lawsuit. *See infra*.

1

### I. Background

#### A. Procedural History

Spencer's *pro se* complaint is difficult to follow. Before the Court can address the merits of defendant's motion, it needs to set out the sequence of events which led to Spencer filing this lawsuit. The Court will rely on the allegations in the complaint, exhibits attached to the complaint (ECF Nos. 1-2 through 1-14), documents related to the complaint in this case which were filed in Spencer's companion case (*Spencer v. Schuette*), and the procedural history recited by the Michigan Court of Appeals in *Spencer*, Nos. 343367 & 343468. *See, e.g., Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

Spencer resides in Benzie County, Michigan. Compl. at PageID.2. Immediately after his release from prison in 2016, Spencer filed a lawsuit (the "civil case") in the Benzie County Circuit Court (sometimes referred to as the "circuit court") suing the Benzie County Prosecutor Sara Swanson ("Prosecutor Swanson") and the Director of the Michigan State Police ("MSP") to declare SORA unconstitutional. *See* Prel. Exam. Trans. at PageID.2457-2458.[2] The civil case started a chain of events which resulted in the present lawsuit. As the Michigan Court of Appeals explained:

> Following defendant's release from prison in August 2016, he filed a [*pro se*] civil complaint against the Benzie County Prosecuting Attorney and the State Police

---

[2] Spencer's testimony regarding the date he filed the civil case appears in the January 26, 2017, preliminary examination transcript from his Benzie County criminal case. A copy of this transcript was filed in *Spencer v. Schuette* as ECF No. 131-1, at PageID.2429-2478, and will be cited in this report as "Prel. Exam. Trans."

>Department Director, arguing that SORA's reporting requirements, as applied to him, were unconstitutional under *Does # 1-5 v Snyder*, 834 F3d 696, 705-706 (CA 6, 2016), which held that the 2006 and 2011 SORA amendments retroactively increased a punishment in contravention of the Ex Post Facto Clause of the United States Constitution. Defendant's civil case was split, and it proceeded in both Benzie County and the [Michigan] Court of Claims.

*Spencer*, Nos. 343367 and 343468 (PageID.17).

Before Spencer's civil case was split between the circuit court and the Court of Claims, Spencer filed a motion for a temporary restraining order ("TRO") related to SORA. At a hearing held on August 30, 2016, Benzie County Circuit Court Judge David A. Thompson denied Spencer's motion, which sought to enjoin the MSP from enforcing SORA as it applies to him and that his current registration be removed from the electronic database maintained by the MSP. Hearing Trans. (Aug. 30, 2016) (ECF No. 1-3, PageID.41, 47).

On November 29, 2016, Judge Thompson addressed Spencer's second motion for a TRO, in which he sought to prevent the transfer of his claims against the MSP to the Court of Claims. *See* Hearing Trans. (Nov. 29, 2016) (ECF No. 1-12). Spencer used the hearing to re-argue his claim that SORA did not apply to him, citing the recent case of *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). *Id.* at PageID.76. Judge Thompson advised Spencer that the request for this relief had been denied, noted that he was aware of the *Does* decision, and proceeded with the hearing. *Id.* at PageID.76-79.

Prosecutor Swanson represented herself in the civil case. She responded to Spencer's arguments regarding the *Does* decision as follows:

>The 6th Circuit Court of Appeals has ruled that the 2006 and 2011 amendments to the Sex Offender Registration Act are ex post facto and are unconstitutional as applied to defendants that were convicted before those dates such as this plaintiff. That is a binding decision. That is something that I would follow. A restraining order is not necessary. The court does not need to order me to follow the law. That's what I do every single day so a restraining order is not necessary.

3

> Now, it did not rule the entire Sex Offender Registration Act is unconstitutional and the other provisions continue to apply to this plaintiff. If he were to choose not to follow those provisions, it is very possible that my office would prosecute him.

*Id.* at PageID.82-83.

Judge Thompson denied Spencer's motion to stop the transfer of the MSP claims to the Court of Claims. The judge also addressed Spencer's claims regarding the *Does* decision:

> Additionally, Mr. Spencer, I don't know for sure but I anticipate that there are many other defendants, past defendants, now plaintiffs, such as yourself that are suddenly confronted with the obligations under SORA and the implications of the *Doe* case. The idea of having 83 different counties in the Circuit Courts rendering decisions that may contradict one another really doesn't make much sense to me. . . .
>
> You should appreciate what Ms. Swanson has said to you today. . . She has indicated that she understands what *Doe* [sic] now has done with regards to the ex post facto application of SORA in Michigan. So I think it's refreshing to have a prosecutor that actually will say those things in a public courtroom and mean it. So the Court's issued its ruling.

*Id.* at PageID.84-86. Spencer appealed Judge Thompson's decision. *See Spencer v. Benzie County Prosecuting Attorney*, No. 335827 (Mich. App. Nov. 14, 2017).[3] Ultimately, the Michigan Court of Appeals reversed Judge Thompson's denial of the TRO. However, it took the appellate court about one year to issue its decision. A number of events occurred during that time period which are relevant to Spencer's allegations in the present lawsuit.

Although Judge Thompson denied his motions for a TRO, Spencer did not complete his SORA registration in November, 2016. *Spencer*, Nos. 343367 and 343468 at PageID.17. The MSP and the local prosecutor concluded that Spencer should have registered, and he was arrested on or about December 23, 2016 and charged with violating SORA (the "criminal case"). Compl. at PageID.4. Spencer contested the charge at the preliminary hearing. First, Spencer claimed that

---

[3] A copy of this opinion appears in *Spencer v. Schuette* as ECF No. 128-11.

4

the court order which required him to register under SORA was invalid. In this regard, Spencer alleged that he introduced a record of his 2001 guilty plea "to demonstrate that the order to register under SORA is tainted by ineffective assistance of both trial and appellate counsel." *Id*. at PageID.5. Spencer alleged (without citation to the court record) that "the preliminary exam court ruled that SORA provides no exception to the Doctrine of Finality of Judgments and, therefore, does not allow Mr. Spencer to rebut the presumption that the undisturbed court order to register under SORA is not tainted by ineffective assistance of counsel." *Id*.

Second, Spencer alleged that this arrest was entrapment, *i.e.*, "he was entrapped by the words of his local prosecuting attorney, at the 11/29/2016 hearing at the Benzie County Circuit Court." *Id*. at PageID.10. Spencer testified that he was led to believe that he did not have to register in November 2016. In his words, "I was told you don't need a temporary restraining order to enjoin enforcement because the top law enforcement officer in the County just said that [SORA] wouldn't be enforced retroactively." Prel. Exam. Trans. at PageID.2462-2463.

While Spencer alleged "entrapment" based on Prosecutor Swanson's statements made during the civil case, his complaint omits the fact that Swanson did not file the criminal case against him. Prosecutor Swanson recognized a potential conflict of interest in charging Spencer for SORA violations because Spencer was suing her in the civil case. For this reason, Swanson requested the appointment of a special prosecutor to address the MSP's investigation of Spencer's SORA violation. On December 14, 2016, Michigan Attorney General Schuette appointed Grand Traverse County Prosecuting Attorney Robert Cooney as the special prosecutor in Spencer's SORA registration case. The special prosecutor reviewed the case and, in a felony complaint dated December 19, 2016, charged Spencer with failing to comply with his reporting duties as a sex

5

offender, refusing/failing to pay the registration fee for a sex offender, and as an habitual offender (fourth offense).[4]

Spencer was bound over on the charges, but the circuit court quashed the bindover. The Michigan Court of Appeals summarized the evidence presented at Spencer's preliminary examination and the circuit court's action as follows:

> Michigan State Police Trooper Kenneth Smith testified that, as a tier III offender, defendant was required to verify his address in November, February, May, and August. According to Smith, when he spoke with defendant in December [2016], defendant was open about not verifying in November [2016], and defendant told Smith that he had been in court the week before [in the civil case] and the prosecutor told him that she would not prosecute him for violating SORA. Smith testified that defendant did attempt to verify his address in January [2017], but because that was not defendant's registration month, the verification was not accepted. The district court bound defendant over on the charges.
>
> Defendant moved to quash the bindover, arguing in pertinent part that he was not required to verify his address in November because the tier III offender classification and registration date scheme was created by 2011 PA 17, which was not applicable to defendant under *Does*. The circuit court remanded to the district court for clarification because the district court had stated that the 1999 version of SORA applied to defendant, but it then bound defendant over on the basis that he had not updated his address in November, which was not a requirement of 1999 PA 85.

*Spencer*, Nos. 343367 & 343468 (PageID.17).

Before the district court held Spencer's second preliminary examination in the criminal case, the Michigan Court of Appeals issued its decision reversing Judge Thompson's order in the civil case. This ruling affected the criminal case, because it enjoined the defendant (the Benzie County Prosecutor) from prosecuting Spencer for violations of the 2006 and 2011 SORA amendments:

> On November 14, 2017, this Court released its opinion on defendant's [Spencer's] civil appeal against the Benzie County Prosecutor, holding that defendant was correct "that in *Does*, the Sixth Circuit Court of Appeals held that

---

[4] *See Spencer v. Schuette*: ECF No. 128-5 (petition for appointment of special prosecutor); ECF No. 128-6 (order of appointment of special prosecutor); and ECF No. 128-7 (felony complaint dated Dec. 19, 2016).

> retroactive application of the 2006 and 2011 SORA amendments violates the Ex Post Facto Clause of the United States Constitution." *Spencer v Benzie Co Prosecuting Attorney*, unpublished per curiam opinion of the Court of Appeals, issued November 14, 2017 (Docket No. 337827), p 2. This Court ultimately "remand[ed] for entry of an order enjoining the prosecution of plaintiff for charges based on a violation of the requirements set forth in the 2006 and 2011 SORA amendments." *Id*. at 3.

*Id*.

Two days after the appellate court remanded the civil case, the district court held a second preliminary examination in the criminal case and bound over Spencer for a different SORA violation:

> The district court held a second preliminary examination on November 16, 2017. The prosecution argued that the 1999 version of SORA required quarterly registration within the first 15 days of October, which defendant did not do. The district court found that there was probable cause to believe that defendant had not complied with the 1999 version of SORA because he was required to report quarterly, which meant between October 1 and October 15. It found that defendant failed to comply with MCL 28.725a by failing to verify his address and again bound defendant over on the charges.

*Id*. at PageID.18.

Spencer challenged the second bindover, which the circuit court quashed:

> Defendant moved to quash the new bindover on the basis that the record did not establish that defendant failed in his obligations as a listed offender. The circuit court issued a written opinion in which it stated that this Court's opinion in Benzie Co held that defendant could not be prosecuted under the 2006 or 2011 versions of SORA. The circuit court noted that MCL 28.725a existed only in the current version of SORA, and it requires verification for defendants who are tier III offenders. The felony information therefore charged defendant with failing to comply with a later version of SORA, and the circuit court again quashed the bindover.
>
> Defendant moved for reconsideration on the basis that the circuit court should have granted defendant additional relief by discontinuing his SORA registration. The prosecution also moved for reconsideration, arguing that the circuit court applied the wrong version of SORA. The circuit court denied both motions.

*Id*.

7

On February 6, 2018, Judge Thompson ordered "that the Benzie County Prosecuting Attorney, and its assigns, is enjoined from prosecuting the Plaintiff for charges based on a violation of the requirements set forth in the 2006 and 2011 amendments to the Sex Offender Registration Act" and closed the case. *See* Order Following Remand (ECF No. 1-5).

While Spencer's civil case against the Benzie County Prosecutor was closed, the special prosecutor continued to press the criminal case for the SORA violations, appealing Judge Thompson's order to quash the bindovers. Spencer filed a cross-appeal. *See Spencer*, Nos. 343367 & 343468. On January 22, 2019, the Michigan Court of Appeals affirmed Judge Thompson's decision quashing the bindover:

> In this case, in a dispute between the present parties about the applicability of SORA to defendant, this Court held [in the civil case] that defendant cannot be prosecuted under the 2006 or 2011 versions of SORA and remanded for entry of an order "enjoining the prosecution of plaintiff for charges based on a violation of the requirements set forth in the 2006 and 2011 SORA amendments." *Benzie Co*, unpub op at 3. We conclude that the circuit court did not err when it determined that 1999 PA 85 was the correct version of SORA to apply to defendant on the basis of our decision in *Benzie Co*.

*Id*. at PageID.19-20 (footnote omitted).

> In sum, we conclude that the circuit court properly quashed defendant's bindover because the law of the case provides that 1999 PA 85 governs defendant's SORA registration, but the prosecutor charged him with violating 2011 PA 17, and the evidence at the bindover was not sufficient to support a finding that defendant violated 1999 PA 85.
>
> On cross-appeal, defendant argues that the circuit court should have determined that he is not required to comply with SORA because 2006 PA 402 and 2011 PA 17 have nullified the definition of "listed offense" in 1999 PA 85. We reject this argument. Because only 1999 PA 85 applies to defendant, later changes to SORA do not affect his case.
>
> We decline to consider the remainder of defendant's arguments in his appeal and crossappeal because they can have no practical effect on this case. *See People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010), amended 486 Mich 1041 (2010).

8

*Id*. at PageID.20-21.

Although the Michigan Court of Appeals affirmed Judge Thompson's order and set out the applicable SORA requirements in 1999 PA 85, Spencer alleged that he was "uncertain" as to whether he was required to update his SORA registration before February 28, 2019 ("pursuant to the current law") or between April 1, 2019 and April 15, 2019 ("pursuant to the law that was deleted in 2011"). Compl. at PageID.7. Spencer sent an email to MSP Trooper Kenneth Smith asking if he would be arrested if he failed to update registration by February 28, 2019. *Id*. In a later telephone call, Trooper Smith "strongly suggested" that Spencer update by February 28th as required by the current law. *Id*. Sometime later, Trooper Smith sent Spencer an email stating that he had not heard back from the Michigan Attorney General's Office, and offered to "take care of the verification this time and by May [2019] maybe we'll have clarification." *Id*. at PageID.8.

Due to Trooper Smith's "lack of authority", Spencer emailed the Benzie County Prosecutor and the special prosecutor. *Id*. at PageID.8. After failing to receive a response, Spencer emailed other individuals including Michigan's Attorney General and Solicitor General asking whether his registration deadline was February 28, 2019. *Id*. at PageID.9. On February 28, 2019, Michigan Assistant Attorney General Schultz advised Spencer in an email that he did not need to register until April, 2019, "as required by the 1999 version of SORA" and that the MSP "will not take action against you for failing to update your registration today." *Id*. at PageID.10. However, Spencer did not believe any of the state actors, felt that he was being "entrapped," and updated his registration on February 28, 2019. *Id*. at PageID.10-11.

### C.     Spencer's claims

A few weeks after registering, Spencer filed the present federal lawsuit against MSP Director Gasper. Spencer seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause

9

of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Spencer's § 1983 complaint consists of a single count for declaratory judgment. *Id*. at PageID.3-13. Spencer claims that SORA is unconstitutional because it is vague, uncertain, and "fails to establish any reasonably ascertainable standard of guilt" contrary to the due process clause of the 14th Amendment. *Id*. at PageID.2. He seeks to have SORA declared unconstitutional. *Id*. at PageID.3.

Spencer also claims that SORA is unconstitutional as to him because it assesses new penalties for failing to register as a sex offender, without giving him an opportunity to challenge the court order which requires him to register under SORA (*i.e.*, his guilty plea and judgment of sentence for the eight predicate sex offenses). Spencer contends that his 2001 guilty plea was "tainted by ineffective assistance of trial and appellate counsel" because his trial lawyer failed to inform him: (1) that "the serious consequences of his decision to plead guilty to a 'Felony Listed Offense' [as identified in SORA] included mandatory registration under SORA"; and, (2) that he forfeited his due process right at future criminal trials on SORA violations to challenge the predicate sex offenses (in Spencer's words "to rebut the presumption that the order to register under SORA was not tainted by ineffective assistance of counsel"). *Id*. at PageID.4, 13 (emphasis omitted). Spencer alleged that he has no adequate remedy at law because he is in imminent danger of "repeated false arrests and malicious prosecutions under SORA." *Id*. at PageID.12-13. Spencer

10

claims that SORA's procedure violates his rights under the due process clause of the 5th and 14th Amendments, and effective assistance of counsel under the 6th Amendment. *Id*. at PageID.2.

For his relief, Spencer wants this Court: to declare SORA facially unconstitutional for "failing to provide an exception to the finality of judgments rule"; to declare that "the finality of judgments rule may not be applied to an order to register under SORA if there is a colorable showing that the order to register is tainted by ineffective assistance of trial and appellate counsel"; to declare that the court order (*i.e.*, the judgment of sentence) directing Spencer to register under SORA "is tainted by ineffective assistance of trial and appellate counsel;" and to enjoin enforcement of that order.. *Id*. at PageID.13.[5]

On April 10, 2019, this Court stayed the present case because Spencer's criminal case was pending on an application for leave to appeal to the Michigan Supreme Court. *See* Order (ECF No. 12). Ultimately, the Michigan Supreme Court denied the application. *See People v. Spencer*, 504 Mich. 894 (June 19, 2019). After the conclusion of Spencer's criminal case, this Court lifted the stay and ordered service on defendant. *See* Order (ECF No. 20). This matter is now before the Court on defendant's motion to dismiss.

## II. Defendant's motion to dismiss

### A. Legal standard

Defendant's motion to dismiss states that it is brought "under Fed.R.Civ.P. 12." *See* Motion (ECF No. 22). Neither defendant's motion nor his brief identifies which portion of Rule 12 applies to his motion, nor does he set out any legal standard. For purposes of this report,

---

[5] In federal litigation, "[t]he final judgment rule means that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *University of Alabama Board of Trustees v. New Life Art, Inc.*, 567 F. Supp. 2d 1326, 1332 (N.D. Ala. 2008) (internal quotation marks omitted). The Michigan courts did not refer to the final judgment rule in addressing Spencer's claim in the criminal case. Rather, the state courts construed Spencer's claim as an improper collateral attack on his 2001 judgment of sentence. *See* discussion in § II.B.3., *infra*.

11

the Court construes defendant's motion as brought pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In this regard, *pro se* complaints, like the one filed in this case, "are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). As discussed, Spencer attached a number of exhibits to his complaint which relate to his claims. Defendant's brief also includes a number of attachments related to Spencer's claims. *See* Exhibits (ECF Nos. 23-1 to 23-8). For purposes of this motion, the Court will consider all of the parties' attachments, as well as related documents filed in *Spencer v. Schuette*. *See Bassett*, 528 F.3d at 430.

### B.     Discussion

#### 1.     The Court should dismiss Spencer's complaint for lack of prosecution.

Spencer did not file a response to defendant's motion to dismiss. Spencer's failure to file a response can be construed as a waiver of opposition to the motion. *See Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013) (recognizing that

the plaintiff had forfeited a claim by failing to respond to or refute arguments made by the defendants in the district court); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (holding that the defendant waived any argument on the issue by failing to oppose a motion to dismiss) (citing *Scott v. State of Tennessee*, 878 F.2d 382 (6th Cir. 1989) (unpublished table decision) (affirming district court's grant of the defendant's unopposed motion to dismiss, and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

This Court's local rules embody this caselaw, requiring that "[u]nless otherwise ordered, any party opposing a dispositive motion *shall*, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." *See* W.D. Mich. LCivR 7.2(c) (emphasis added); *Woods v. Demmer Corp.*, No. 1:09-cv-625, 2010 WL 5147364 at *3 (W.D. Mich. Nov. 18, 2010), R&R adopted, 2010 WL 5146569 (W.D. Mich. Dec. 13, 2010) (noting that the local court rules require a party to file a responsive brief if the party opposes the motion and that the district court may deem the plaintiff to have waived opposition to a motion to dismiss if the plaintiff fails to respond or otherwise oppose it).

As a *pro se* litigant, plaintiff is "required to follow the rules of civil procedure and easily-understood Court deadlines." *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999). Spencer's failure to file a response to defendant's motion to dismiss is tantamount to a failure to prosecute his claims. "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629 (1962). Accordingly, defendant's unopposed motion should be granted as unopposed.

    **2.  The Court should dismiss Spencer's complaint because he is part of a class action seeking the same relief.**

Defendant contends that Spencer's complaint should be dismissed because he is part of a class action which seeks to have SORA declared unconstitutional and unenforceable, *John Does #1-6 v. Snyder, et al.*, 2:16-cv-13137 ("*Does II*"), 2020 WL 758232, -- F.Supp. 3d -- (E.D. Mich. Feb. 14, 2020). The Court agrees. Plaintiff is part of two classes in *Does II*: the "primary class," which is defined as "all people who are or will be subject to registration under Michigan's Sex Offenders Registration Act"; and, the "pre-2006 ex post facto subclass," which is defined as "members of the primary class who committed their offense or offenses requiring registration before January 1, 2006, and who have committed no registrable offense since." *See Does II* (Order Granting Class Certification) (Sept. 11, 2018) (ECF No. 23-3, PageID.278-280). Members of the "primary class" seek relief on constitutional claims of vagueness, strict liability, and violation of the First Amendment. Members of the "pre-2006 ex post facto subclass" seek relief for an ex post facto violation. *Id*.

In *Does II*, the court certified the primary class and sub-classes under Fed. R. Civ. P. 23 to avoid inconsistent results in individual lawsuits:

> 6.    The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(a) are met because (1) the class and subclasses are so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class and subclasses, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and subclasses, and (4) the representative plaintiffs will fairly and adequately protect the interests of the class and subclasses.
>
> 7.    The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(b)(1)(A) are met because prosecuting separate actions by or against individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class". Fed. R. Civ. P. 23(b)(1)(A).
>
> 8.    The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(b)(2) are met because the party opposing the

> class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief would be appropriate respecting the class as a whole if plaintiffs prevail in demonstrating that those actions or inactions violate plaintiffs' rights. . . .
>
> 15. By stipulating to this order, the plaintiffs, and the class members they represent, are not waiving any claims with respect to other causes of action or other forms of relief which they have not pled in this action for declaratory and injunctive relief.

*Id.*

Spencer cannot opt out of these classes and seek his own relief in a separate lawsuit. *See Walmart-Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62 (2011). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360 (2011) (internal quotation marks omitted). Permitting the combination of individualized and classwide relief in a Rule 23(b)(2) class is inconsistent with the structure of this rule, which provides relief for the entire class and provides no opportunity for a class member to opt out. *Id.* at 361-62.

On February 14, 2020, the court in *Does II* granted relief to the primary class and the subclasses, stating in pertinent part:

> For several years, registrants have been forced to comply with unconstitutional provisions of SORA. The parties, and this court, expected that the Sixth Circuit's ruling would spur legislative action, and for some time, it appeared that the legislature was poised to pass a new and comprehensive statute, obviating the need for this opinion. Unfortunately, the legislature was not able to finalize a new registration statute. Faced with the continued violation of their rights, Plaintiffs returned to this court to remedy Defendants' ongoing violations. The court's duty is to invalidate those portions of SORA that violate the Constitution. In so doing, the court recognizes that its ruling will fracture the existing structure of SORA. However, the court anticipates that its ruling will reignite efforts to finalize a new, unified registration statute that can survive constitutional review, as has the national model, SORNA.

> But until such time as the legislature acts, SORA will be unenforceable against a large portion of registrants and may be enforced only in part against the remaining registrants.
>
> For the reasons explained above, the court will grant Plaintiffs' pending motions and will enter permanent injunctive relief on behalf of the ex post facto subclasses and the primary class. Upon the entry of final judgment in this case, Defendants will be permanently enjoined from enforcing any provision of SORA against members of the ex post facto subclasses and will be permanently enjoined from enforcing the provisions described in Part III.B of this opinion against any registrant. The parties will immediately begin efforts to formulate a joint, proposed form of judgment, which will become effective 60 days after entry. The court will include this 60-day window until the judgment becomes effective principally to allow time for the legislature to craft and enact a new statute.
>
> Additionally, the parties will promptly begin to prepare documents sufficient to provide notice of this opinion, and its impact, to all registrants, all law enforcement officials, and prosecuting attorneys responsible for enforcement of SORA. As part of this notification process, Defendants must update their Explanation of Duties form provided to all registrants.
>
> To be clear: SORA will not become unenforceable as of the date of this order. Rather, the holdings in this opinion will become effective and enforceable only after the entry of a final judgment, at the time specified in that final judgment. Accordingly,
>
> IT IS ORDERED that Plaintiffs' motion for declaratory and injunctive relief (ECF No. 62) is GRANTED. Michigan's SORA is DECLARED NULL AND VOID as applied to members of the ex post facto subclasses (any registrant whose offense requiring them to register, and who has not committed a subsequent offense, occurred prior to April 12, 2011). Defendants and their agents will be ENJOINED from enforcing ANY provision of SORA against members of the ex post facto subclasses.
>
> The holdings in this order will not become effective until the time described in the Judgment, which will be entered later.

*Does II*, 2020 WL 758232 at *13. Unfortunately, the pandemic disrupted the mechanism set forth in *Does II*. On April 6, 2020, the Court ordered "that any final judgment is hereby SUSPENDED for the duration of the COVID-19 crisis." *Id.*, 2020 WL 1684156 at *2, -- F.Supp.3d -- (E.D. Mich. April 6, 2020).

Spencer has no legal basis to press his individual claims for declaratory or injunctive relief in the present lawsuit. Spencer is a member of both the primary class and the pre-2006 ex post facto subclass in *Does II*, and he must accept the relief provided in *Does II*. See *Walmart-Stores, Inc.*, 564 U.S. 338; *Dentry v. Snyder*, No. 17-10643, 2020 WL 1506404 at *2 (E.D. Mich. March 30, 2020) (as a member of the certified Rule 23(b)(2) class in *Does II*, the plaintiff could not opt out of the class or separately litigate his claims; however, the plaintiff could pursue his legally cognizable claim as a class member). The court in *Does II* declared that SORA is "NULL AND VOID" as applied to members of an ex post facto subclass. As a member of that subclass, Spencer has received the declaratory relief he seeks in the present lawsuit. Accordingly, Spencer's complaint should be dismissed.

### III.    Recommendation

Accordingly, I respectfully recommend that defendant's motion to dismiss (ECF No. 22) be **GRANTED** and that this action be **DISMISSED**.

Dated: August 31, 2020                             /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).